UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA      )
      )
     v.      )
      )  No. 20-cr-10231-IT
JERROD LEE,      )
      )
     Defendant      )

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**

The United States hereby opposes defendant Jerrod Lee ("Lee" or "Defendant")'s Motion to Suppress Evidence Derived from the Execution of a Search Warrant at 819 County Street Apartment A-13 (the "Motion").  Dkt. 63.

Law enforcement lawfully executed an arrest warrant for Defendant at Defendant's identified residence on August 7, 2020 in connection with then-pending state firearms charges (Middlesex Superior Ct. Dkt. #1981CR00065).  Before doing so, law enforcement took steps to confirm that Defendant would be present there, including by reviewing his location "pings" from the GPS bracelet Defendant was wearing in connection with being monitored by probation.  Law enforcement knocked and announced their presence at Defendant's apartment before seeking entry.  Upon doing so, law enforcement received no response but instead heard suspicious and hurried scurrying sounds from within.  Using a key that the apartment complex's facility manager had provided them, law enforcement entered Defendant's apartment and immediately observed further suspicious and furtive conduct; they saw an individual near a couch with his hands out of sight, heard a metallic sound come from the direction of that same area, and saw that individual appear to try to kick something under the couch.  Seconds later, Defendant – whom detectives were there to arrest and whom they knew had had pending firearms charges – emerged from a hallway.  No other persons were present in Defendant's apartment.  Based on

their observations and training and experience, law enforcement secured Defendant and Fullard, observed a loaded firearm on the floor near the couch, and conducted a protective sweep.

After observing the first firearm, law enforcement froze the scene and sought and obtained a warrant from Taunton District Court to search Defendant's apartment for firearms, feeding devices, accessories, and ammunition on a good faith belief that evidence of a crime would be present therein, supported by the affidavit of Taunton Police Department Detective Brian Dunham (the "Dunham Affidavit" or "Dunham Aff.").

After obtaining this search warrant, which was sufficiently supported by probable cause, detectives lawfully executed it and recovered a second loaded firearm in an open bag in a closet in the hallway from which officers had seen Defendant emerge.  Alternatively, even if this Court were to find that the state magistrate erred in determining that probable cause existed, the officers who executed it relied in good faith on a court-authorized search warrant when they searched Defendant's residence.  For these and other reasons, the extreme remedy of suppression is not warranted, and Defendant's Motion should thus be denied.[1]  *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016) (suppression is remedy of "last resort" that entails substantial societal cost).

## FACTUAL BACKGROUND

**A.  Execution of Arrest Warrant for Defendant at Defendant's Apartment, Recovery of First Loaded Firearm, and Search Warrant Application**

As set forth in the Dunham Affidavit, on August 6, 2020, the Boston Police Department Gang Unit informed the Taunton Police Street Crimes Unit that Defendant had an active arrest warrant in connection with Defendant's firearms case in Middlesex Superior Court, Dkt.

---

[1]Defendant does not dispute the facts and does not seek an evidentiary hearing.  No evidentiary hearing is needed; as detailed herein, the Motion can be decided and denied without such.

#1981CR00065,[2] and requested assistance locating and apprehending Defendant.[3]  Ex. 1 (Dunham Search Warrant Application and Affidavit) ¶ 2; *see* Ex. 4 at 3, 17 (Docket Sheet, Middlesex Superior Ct. Dkt. #1981CR00065).  Four months prior, Taunton Police had executed another arrest warrant for Defendant at his identified residence, 819 County Street, Apartment A-13, Taunton, Massachusetts ("Defendant's Apartment").  Dunham Aff. ¶ 1.  Additionally, at this time (August 2020), Massachusetts Probation Service was monitoring Defendant via a GPS bracelet.  *Id.* ¶ 3.

The next morning (August 7, 2020), detectives took steps to confirm that Defendant would be present at Defendant's Apartment, where they had previously arrested Defendant four months earlier: they observed that that morning, Defendant's GPS monitoring placed him there before 10:00 a.m. and again at approximately 10:20 a.m.  *Id.*

At approximately 10:30 a.m., detectives knocked and announced their presence at Defendant's Apartment.  *Id.* ¶ 5.  No one opened the door or otherwise responded; to the contrary, upon announcing their presence, detectives heard "what appeared to be people inside the apartment hurriedly scurrying about."  *Id.*  Detectives thus entered Defendant's Apartment using a master key that the facilities manager had provided.  *Id.* ¶ 4.

---

[2] Defendant was charged in this Middlesex Superior Court case with carrying a firearm without a license, in violation of M.G.L. c269 § 10(a); unlawful possession of firearm without FID card, in violation of M.G.L c269 § 10(h); and unlawful possession of ammunition without FID card, in in violation of M.G.L c269 § 10(h)(1).  Ex. 4; *see* Dunham Aff. ¶ 2.

[3] The Dunham Affidavit stated that the arrest warrant was for a probation violation; to be more precise, the arrest warrant was for violations of pre-trial release conditions being supervised by the Massachusetts Probation Service.  Dunham Aff. ¶ 2; *see* Ex. 4 at 3, 17 (Middlesex Sup. Ct. Dkt. No. 1981CR00065)

Immediately upon entry, detectives saw a male individual, later determined to be Ronney

Fullard ("Fullard"), "bent over next to the couch with his hands concealed by the couch" and

heard a "metallic clicking noise" come from that area, "as though [Fullard] had dropped

something metal on the floor." *Id.* ¶ 6. As Fullard stood up, detectives observed that his hands

were empty and that he was trying to kick something under the couch. *Id.* "Seconds later,"

Defendant entered the room from a hallway. *Id.* ¶ 7. No other persons were found in

Defendant's Apartment. *Id.* ¶ 8.

Detectives then saw a black semi-automatic handgun on the floor in or about the couch

area, where they had observed Fullard trying to kick, while securing Defendant and Fullard and

conducting a protective sweep of Defendant's Apartment. *Id.*

Detectives froze the scene and applied to Taunton District Court for a warrant to search

Defendant's Apartment for firearms, feeding devices, accessories, and ammunition. *Id.* A

Taunton District Court magistrate made an independent finding that there was probable cause

that the firearms-related items sought were: "intended for use or ha[d] been used as the means of

committing a crime;" "ha[d] been concealed to prevent a crime from being discovered;" "[were]

unlawfully possessed or concealed for an unlawful purpose;" and "[were] evidence of a crime or

. . . of criminal activity," and authorized the search of Defendant's Apartment and on the person

or in the possession of Defendant. Ex. 2 (Taunton District Search Warrant 20SW0144).

**B.  Execution of Search Warrant at Defendant's Apartment and Recovery of Second
    Loaded Firearm**

After obtaining the warrant from Taunton District Court, detectives searched Defendant's

Apartment and located a loaded Ruger .45 caliber handgun with five rounds of .45 caliber

ammunition (the "Ruger handgun") in an open bag in a hallway closet – the same hallway from

which detectives previously had observed the Defendant emerge.  Ex. 3 (Search Warrant 20SW0144 Return) at 2.  The first handgun observed was determined to be a loaded Taurus 9mm with six rounds of 9mm ammunition (the "Taurus handgun").  *Id.*

## C.  Criminal Charges

Defendant and Fullard were each charged with unlawful firearms and ammunition possession charges in Taunton District Court.  *See* Tauton Dist. Ct. Dkt. Nos. 2031CR001467, 2031CR001469.

On October 13, 2020, a federal grand jury charged Defendant and Fullard respectively with being a convicted felon in possession of firearm and ammunition, namely, the Ruger handgun and .45 caliber ammunition and the Taurus handgun and 9mm ammunition, in violation of 18 U.S.C. § 922 (g)(1).  Dkt. 1.

## LEGAL ARGUMENT

The Dunham Affidavit sufficiently supported the Taunton District Court magistrate's determination of probable cause to issue a search warrant for Defendant's Apartment, which is presumptively valid and owed great deference.  Even if the Court were to find that the magistrate erred in determining that probable cause existed, detectives in good faith relied on the warrant issued by a neutral magistrate and searched Defendant's Apartment pursuant thereto.  The purpose of suppression is to ensure deterrence of law enforcement's unlawful conduct, which did not occur here.  Suppression is unwarranted.

## A.  The Dunham Affidavit Provided Sufficient Evidence to Support the Magistrate's Finding of Probable Cause

As the First Circuit has "repeatedly emphasized, '[a]n affidavit supporting a search warrant is presumptively valid.'"  *United States v. McLellan*, 792 F.3d 200 (1st Cir. 2015) *cert.*

*denied*, 136 S. Ct. 494 (2015) (quoting *United States v. Gifford*, 727 F.3d 92, 98 (1st Cir. 2013)).

Where, as here, "a defendant challenges the legality of a search conducted pursuant to a search

warrant, the defendant bears the burden of showing by a preponderance of the evidence that the

search was unlawful." *United States v. Galloway*, No. CR-10162-DJC, 2020 WL 4369648, at *2

(D. Mass. July 30, 2020).  In this case, a magistrate found probable cause based on the Dunham

Affidavit, and that determination is owed "great deference." *Illinois v. Gates*, 462 U.S. 213, 236

(1983) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)); *see United States v. Zayas-*

*Diaz*, 95 F.3d 105, 111 (1st Cir. 1996).  This Court may "reverse the magistrate judge's initial

evaluation only if [it sees] no substantial basis for concluding that probable cause existed."

*United States v. Dixon*, 787 F.3d 55, 58–59 (1st Cir. 2015) (quoting *United States v. Ribeiro*, 397

F.3d 43, 48 (1st Cir. 2005)).  This Court "must examine 'the affidavit in "a practical, 'common

sense' fashion, and [] accord considerable deference to reasonable inferences the [issuing

magistrate] may have drawn from the attested facts.""" *Zayas-Diaz*, 95 F.3d at 111 (quoting

*United States v. Buclavas*, 970F.2d 937, 940 (1st Cir. 1992), *cert. denied*, 507 U.S. 959 (1993)).

"Probable cause is a nontechnical conception that relies on common-sense conclusions

about human behavior and the factual and practical considerations of everyday life on which

reasonable and prudent people act." *United States v. Mendoza-Maisonet*, 962 F.3d 1, 17–19 (1st

Cir. 2020) (internal quotation marks and citations omitted).  "[P]robable cause does not demand

certainty, or proof beyond a reasonable doubt, or even proof by a preponderance of the

evidence—it demands only 'a fair probability that contraband or evidence of a crime will be

found in a particular place.'" *United States v. Rivera*, 825 F.3d 59, 63–64 (1st Cir. 2016)

(quoting *Gates*, 462 U.S. at 214); *United States v. Adams*, 971 F.3d 22, 32 (1st Cir. 2020) ("The

probable cause standard 'is not a high bar.'") (quoting *Kaley v. United States*, 571 U.S. 320, 338

(2014)).

A warrant application demonstrates probable cause when it shows that "(1) a crime has

been committed – the 'commission' element, and (2) enumerated evidence of the offense will be

found at the place searched – the so-called 'nexus' element." *Dixon*, 787 F.3d at 59 (quoting

*Feliz*, 182 F.3d at 86). In determining whether the affidavit is supported by probable cause, the

Court must consider the "totality of the circumstances," *United States v. Tiem Trinh*, 665 F.3d 1,

10 (1st Cir. 2011), "a phrase that means that all material 'circumstances should be considered.'"

*Rivera*, 825 F.3d at 64. This standard reflects "the factual and practical considerations of

everyday life on which reasonable and prudent [people], not legal technicians, act." *Gates*, 462

U.S. at 231.

> The criterion . . . is whether the facts presented in the affidavit would 'warrant a man of reasonable caution' to believe that evidence of crime will be found. There is no requirement that the belief be shown to be necessarily correct or more likely true than false. A practical, commonsense assessment, providing a substantial basis for the magistrate's finding of probable cause, is what is called for.

*Feliz*, 182 F.3d at 87. The probable cause showing may be supported by direct or circumstantial

evidence, and "leaves ample room for reasonable inferences based on common experience: an

affidavit submitted to show probable cause need not point to some straight-line connection but,

rather, may rely on the affiant's connecting of a series of dots in a commonsense way." *Adams*,

971 F.3d at 31–32.

Here, Defendant attacks the magistrate's independent determination of probable cause

that evidence of a crime would be found in Defendant's Apartment despite that detectives (1)

were at Defendant's Apartment to arrest Defendant on a warrant in connection with Defendant's

pending firearm charges; (2) at their arrival, heard "people" engaging in evasive behavior inside

Defendant's Apartment and found only Defendant and Fullard therein; (3) observed further deliberately furtive behavior upon entry – namely, Fullard bent over next to a couch with his hands hidden, a noise as though something metal had dropped on the floor, Fullard appearing to try to kick something under the couch, and Defendant emerging from a hallway seconds later – ; and (4) recovered a loaded firearm inside Defendant's Apartment in or about the exact area where suspicious behavior was observed.  This challenge fails.

i.   The Dunham Affidavit Establishes a Reasonable Belief of Crime

Defendant's first argument – that probable cause fails because the Dunham Affidavit "lacked evidence that either [Fullard] or [Defendant] had committed a crime" based on the assertions that (1) it "rest[ed] primarily on a single piece of evidence-the gun discarded by [Fullard]" and that (2) "nothing within the affidavit suggested that [Defendant] was aware of the firearm or ever possessed it," Motion at 6, 7, is inaccurate and ignores the totality of the circumstances that must be considered.  *Tiem Trinh*, 665 F.3d at 10.  A review of the Dunham Affidavit in the proper "practical, common sense fashion," granting "considerable deference to reasonable inferences the [magistrate] may have drawn from the attested facts," demonstrates the search warrant's validity.  *Zayas-Diaz*, 95 F.3d at 111.

As an initial matter, to be sure, the loaded Taurus handgun is a significant piece of the probable cause equation.  But the assertion that "police observed [Fullard] discard his firearm" is incorrect.  Motion at 7.  Detectives did not observe Fullard holding a firearm, let alone "his firearm."  *See* Dunham Aff. ¶¶ 6, 8 (detailing that detectives saw Fullard bent over the couch, with his hands concealed, and then stand up while raising his hands, both empty).[4]  Regardless,

---

[4] While Fullard was eventually charged with this first loaded firearm, that does not detract from the fact that at the time the search warrant was sought, law enforcement had not yet completed its investigation and had not yet determined who should be charged with possessing which of the

the facts and circumstances provided sufficient evidence to support probable cause of a firearms crime.  Detectives found the loaded Taurus handgun in a common area of Defendant's Apartment, over which Defendant had control and to which he had right of access, while he was present therein.  At this initial stage of investigation, upon entry, detectives did not know where the loaded Taurus handgun came from or how it came to be by the couch, and its recovery in Defendant's Apartment alone provided probable cause that Defendant constructively possessed it.  *See, e.g.*, *United States v. Zavala Maldonado*, 23 F.3d 4, 7 (1st Cir. 1994) ("The location of drugs or firearms in a defendant's home or car is a common basis for attributing possession to the defendant . . . even if the residence or room is shared by others."); *United States v. Ridolfi*, 768 F.3d 57, 61–62 (1st Cir. 2014) ("Constructive possession of a firearm may be established when a person knowingly has the power and intention at a given time of exercising dominion and control over it either directly or through others.  Constructive possession may be sole or joint and does not require actual ownership of the firearm . . . the requisite knowledge and intention can be inferred from circumstances such as a defendant's control over the area where the contraband is found (e.g., defendant's home or automobile).)" (internal quotations and citation omitted); *United States v. Davis*, 773 F.3d 334, 341–42 (1st Cir. 2014) (knowledge of firearm inside residence, for constructive possession purposes, may be inferred from control of the area).

Further, detectives were at Defendant's Apartment to execute an arrest warrant for Defendant in connection with unlawful firearms possession charges, four months after a separate arrest warrant was executed for Defendant at the same location.  Dunham Aff. ¶ 1, *id*. ¶¶ 2–3, 5. It is logical then, that such circumstances contributed to probable cause that another firearms crime had been committed, and/or that additional possession of a firearm or ammunition by

---

two loaded firearms recovered in Defendant's Apartment.

Defendant and/or in Defendant's Apartment might be unlawful. *Adams*, 971 F.3d at 31–32;

*Mendoza-Maisonet*, 962 F.3d at 17–19; *Tiem Trinh*, 665 F.3d at 10.

Moreover, it is well established that suspicious behavior, including furtive actions and
flight at the approach of law enforcement, may contribute to probable cause. *See, e.g.*, *Sibron v.
New York*, 392 U.S. 40, 66-67 (1968) ("[D]eliberately furtive actions and flight at the approach
of strangers or law officers are strong indicia of mens rea, and when coupled with specific
knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper
factors to be considered in the decision to make an arrest."); *see also United States v. Awer*, 770
F.3d 83, 91–92 (1st Cir. 2014) (suspicious movements including bending "as if [] trying to
conceal or retrieve something" may justify a belief that criminal activity is afoot (i.e., that
reasonable suspicion exists)). Here, neither Defendant nor Fullard opened the door or otherwise
responded to detectives' knocking and announcing themselves; to the contrary, detectives heard
"people hurriedly scurrying" inside Defendant's Apartment and had to enter using the master
key. Dunham Aff. ¶ 5. Moreover, once detectives were inside, they observed more furtive
behavior – Fullard's movements hidden by the couch, a noise consistent with something metal
hitting the floor, Fullard's attempts to kick something, and Defendant's appearance in the room
"[s]econds later" – and found a loaded firearm on the floor. *Id.* ¶¶ 6–8. No one other than
Defendant and Fullard were inside Defendant's Apartment. *Id.* ¶ 8. The "reasonable inference"
then, is that the people detectives heard "hurriedly scurrying" were Defendant and Fullard, and
that they were engaging in evasive behavior at the approach of law enforcement. *Adams*, 971
F.3d at 31–32. Such a "common-sense conclusion[] about human behavior" added to probable
cause. *Mendoza-Maisonet*, 962 F.3d at 17–19; *see Sibron*, 392 U.S. at 66–67; *Awer*, 770 F.3d at
91–92.

Defendant's effort to analogize this case to *United States v. Lester* does not hold water.

Motion at 7.  There, a search warrant for the defendant's home was obtained based on the drug

trafficking of another person, without any evidence that the defendant participated committing

the crime. 184 F. App'x 486, 489 (6th Cir. 2006).  By contrast, here, officers obtained a search

warrant for Defendant's Apartment premised upon Defendant's criminal history and arrestable

status in connection with unlawful firearms charges, Defendant's behavior in his own Apartment,

and a loaded firearm recovered in Defendant's Apartment while Defendant was present therein.

*See* Dunham Affidavit.  Moreover, in *Lester*, the Court highlighted as irrelevant that the

defendant was arrested for selling drugs eleven years earlier.  *Lester*, 184 F. App'x at 489.  Here,

however, detectives, at the same time they sought the warrant, (1) were at Defendant's

Apartment to execute an arrest warrant for him in connection with open firearms charges and (2)

directly observed a firearm in Defendant's Apartment while he was present.  Such circumstances

and direct observations contributed to probable cause.  *Tiem Trinh*, 665 F.3d at 10; *see United*

*States v. Love*, 58 F. App'x 165, 166 (8th Cir. 2003) (observation of handgun box in defendant's

home, whose probation conditions prohibited him from owning non-hunting guns, as well as

defendant's convicted felon status, provided probable cause for search warrant for handguns).

The Dunham Affidavit provided sufficient evidence establishing probable cause that a

crime had been committed, and the Court, examining it in common sense fashion that it must,

should accord the magistrate's reasonable inference the deference owed.  *Zayas-Diaz*, 95 F.3d at

111; *Feliz*, 182 F.3d at 87; *Gates*, 462 U.S. 213 at 236.

    ii.    <u>The Dunham Affidavit Demonstrates a Nexus to Defendant's Apartment</u>

Failing to sufficiently challenge the commission element of probable cause, Defendant next

argues that the Dunham Affidavit failed to demonstrate a belief that evidence of a crime would be

found in Defendant's Apartment.   Again, however, Defendant ignores the totality of the circumstances, which plainly established a nexus between the illicit activity and Defendant's Apartment.

Nexus need not, and typically will not, rely on direct observation; rather, "common sense says that a connection with the search site can be deduced 'from the type of crime, the nature of the items sought,' plus 'normal inferences as to where a criminal would hide' evidence of his crime." *Rivera*, 825 F.3d at 63 (quoting *Feliz*, 182 F.3d at 88).  The First Circuit has, "with a regularity bordering on the echolalic, endorsed the concept that a law enforcement officer's training and experience may yield insights that support a probable cause determination." *United States v. Floyd*, 740 F.3d 22, 35 (1st Cir. 2014).

The First Circuit has made clear that there is often probable cause to search the residence of a person suspected of criminal activity, given the "commonsense realization that one tends to conceal fruit and instrumentalities of a crime in a place to which easy access may be had and in which privacy is nevertheless maintained.  In normal situations, few places are more convenient than one's residence for use in planning criminal activities and hiding fruits of a crime." *United States v. Joubert*, 778 F.3d 247, 252–53 (1st Cir. 2015) (probable cause existed to search defendant's parents' home for photos and videos where affidavit indicated that defendant lived there) (quoting *United States v. Kapordelis,* 569 F.3d 1291, 1310 (11th Cir. 2009) (quotation marks omitted).  This is especially so where, as here, the "nature of the items sought supports a common-sense inference that the items would endure among [an individual's] belongings." *Id.* at 252 (opining that photos and videos, unlike drugs, are "customarily created for preservation" and do not pose staleness problems).  "A magistrate interpreting a search warrant affidavit in the proper commonsense and realistic fashion may find probable cause to believe that criminal

objects are in a suspect's residence even if there's no direct evidence: that is, even if agents or their informants never spotted the illicit objects at the scene." *United States v. Gonzalez-Arias*, 946 F.3d 17, 24 (1st Cir. 2019), *cert. denied*, 140 S. Ct. 2729 (2020) (internal quotation marks and citations omitted).

Courts routinely find probable cause to search homes for firearms even where, unlike here, there is no direct evidence, based on "little more than an inference that the most likely place to find a firearm is on the suspect's person or in his residence." *United States v. Dumornay*, No. CR.A.04-10309-GAO, 2006 WL 3050813, at *5 (D. Mass. Oct. 25, 2006); *see United States v. Ingram*, No. 02-10360-RWZ, 2003 WL 21058181, at *2 (D. Mass. May 9, 2003) (after "considering the circumstances in a practical and realistic manner," finding affidavit sufficient despite that it "did not recite any direct evidence to suggest the presence of the items [sought] in the apartment" because "that is not the standard") ("It is reasonable to infer that one's home would be used to keep and hide a gun and other paraphernalia employed in a crime that occurred elsewhere."); *United States v. Anderson,* 851 F.2d 727, 729 (4th Cir. 1988) (finding warrant valid as it was "reasonable for the magistrate to believe that the defendant's gun and the silencer would be found in his residence," despite that affidavit "contained no facts that the weapons were located [therein]"); *United States v. Steeves,* 525 F.2d 33, 38 (8th Cir. 1975) (finding warrant valid and affirming magistrate's probable cause determination as "people who own pistols generally keep them at home or on their persons").

Here, of course, in addition to Defendant's outstanding arrest warrant in connection with his unlawful firearms possession charges and the evasive behavior observed by detectives at Defendant's Apartment, the loaded Taurus firearm recovered in Defendant's Apartment constituted direct evidence of precisely the items sought, in exactly the location to be searched.

13

*See United States v. Allen*, 169 F. App'x 634, 636 (2d Cir. 2006) ("There is no question that the magistrate judge who issued the search warrant . . . had a substantial basis for concluding that probable cause existed after reviewing the requesting officer's affidavit that included, *inter alia*, a description of the counterfeit money and gun found at the residence."); *United States v. Lyles*, 71 F. App'x 110, 111 (3d Cir. 2003) (affirming validity of search warrant for defendant's apartment where officers executing fugitive warrant for defendant observed ammunition in plain view and woman in apartment stated that defendant had a gun); *United States v. McMillian*, 786 F.3d 630, 638–39 (7th Cir. 2015) (affirming finding of probable cause where "[a] reasonable person considering [the officer's] observation of [] two gun cases would believe that a search would reveal firearms and ammunition").  As detailed above, there was sufficient probable cause tying Defendant to the Taurus handgun found in his own Apartment while he was present therein.  *See Zavala Maldonado*, 23 F.3d at 7; *Ridolfi*, 768 F.3d at 61–62; *Davis*, 773 F.3d at 341–42.

Moreover, Detective Dunham's fourteen years of extensive training and experience in "hundreds of narcotics-related investigations," many of which resulted in the "seizure of drugs, monies, firearms, and property," as well as his firearms familiarity, Dunham Aff. at 2, *id.* at 3, "yield[ed] insights that support a probable cause determination."  *Floyd*, 740 F.3d at 35; *see Adams*, 971 F.3d at 31–32.

Based on all of these facts, buttressed by Detective Dunham's experience and training, it is a simple, commonsense inference that evidence of firearms crimes (in addition to the Taurus handgun already observed) would be found in Defendant's Apartment.  *See United States v. Hershenow*, 680 F.2d 847, 852 (1st Cir. 1982) ("[T]he magistrate is entitled to go beyond the averred facts and draw upon common sense in making reasonable inferences from those facts.");

*United States v. Falon*, 959 F.2d 1143, 1147 (1st Cir. 1992) (courts "interpret affidavits for search warrants in a commonsense and realistic fashion" (internal quotations omitted)).

*United States v. Roman* is not to the contrary.  942 F.3d 43, 52 (1st Cir. 2019); *see* Motion at 12–13.  There, the First Circuit upheld the suppression of evidence seized pursuant to a search warrant of Roman's residence because there was insufficient evidence to directly tie drug activity to the home.  Indeed, the affidavit in *Roman* "fail[ed] to even on one occasion place Roman himself at the residence, let alone in connection with drug crimes."  942 F.3d at 52.  In this and many other critical regards, *Roman* is readily distinguishable.

The *Roman* affidavit specifically established that Roman stored contrabands in vehicle, making it less likely that he needed to use his home for that purpose.  *See id.* at 49.  The affidavit also supported the search of six other locations including the "headquarters" of the drug trafficking organization, and *Roman's* co-conspirator was the main focus of the affidavit, which meant that "it [was] more likely that such evidence would be found at the residence or business of another individual."  *See id.* at 53.  Here, the magistrate was presented with a single warrant for a single location in which direct evidence of precisely the items sought had already been found, and was permitted to draw the common sense inference that additional evidence of a crime would be found in Defendant's Apartment – one of the two "the most likely place[s] to find a firearm" – where Defendant was present at his Apartment at the time the loaded Taurus firearm was recovered therefrom, was arrestable in connection with unlawful firearms and ammunition possession charges, and had engaged in evasive behavior at the approach of law enforcement.   *Dumornay*, 2006 WL 3050813, at *5; *see Joubert*, 778 F.3d at 253.

*Roman* also involved a warrant to search for drugs.  The warrant here sought firearms, ammunition, and related accessories. This distinction in the "nature of the items sought" is

meaningful to the Court's inquiry. *Rivera*, 825 F.3d at 63; *see Joubert*, 778 F.3d, at 252 (items that "customarily created for preservation" are likely to "endure among [an individual's] belongings"); *Feliz*, 182 F.3d at 87 (evidence of drug transactions can be expected to be found in a drug trafficker's residence months after evidence of last transaction).

Finally, because the affidavit in *Roman* contained "reckless misstatements," the First Circuit "afforded no deference to the magistrate judge's determination." *Roman*, 942 F.3d at 53. There are no such misstatements here and the Court should therefore afford the magistrate's determination substantial deference.

Nor is *United States v. McPhearson* analogous to the facts of this case. 469 F.3d 518, 520–522 (6th Cir. 2006); *see* Motion at 10–12. There, the Sixth Circuit found that McPhearson's arrest outside of his home (on his front porch) with crack cocaine on his person failed to establish a fair probability that the inside of his home would contain evidence of wrongdoing, and thus held that the officer's affidavit did not establish probable cause for the issuance of a warrant to search McPhearson's residence for drugs and related paraphernalia, where he was arrested for a non-drug offense and there was no other evidence that he was a known drug dealer. *McPhearson*, 469 F.3d at 520. Here, not only did detectives find the loaded Taurus handgun inside Defendant's Apartment while he was present therein, providing probable cause that Defendant constructively possessed it, as detailed above, but moreover, unlike the "absence of any facts connecting McPhearson to drug trafficking" that would permit the magistrate to "draw the inference that evidence of wrongdoing would be found in [his] home," *McPhearson*, 469 F.3d at 524–25, the Dunham Affidavit provided additional facts tying Defendant to firearms offenses – namely, the fact that he was arrestable in connection with open firearms charges at the time and had been

observed engaging in evasive behavior at the approach of law enforcement.  In nearly every meaningful regard, *McPhearson* is inapposite.

Considering the totality of the circumstances – including the detailed evidence and specific observations, buttressed by a law enforcement agent's experience and training – the Dunham Affidavit established the requisite "fair probability" that firearms, feeding devices, ammunition, and related accessories would be found in Defendant's Apartment.  *Rivera*, 825 F.3d at 63.  "A practical, commonsense assessment, providing a substantial basis for the magistrate's finding of probable cause," was established, *Feliz*, 182 F.3d at 87, and the Court should grant the magistrate's determination the "great deference" owed.  *Gates*, 462 U.S. at 236.

## B.  Officers Relied in Good Faith on the Search Warrant

Even assuming *arguendo* that this Court finds the magistrate's probable cause determination in issuing the search warrant lacking, the evidence obtained pursuant thereto would remain admissible under the "good faith" exception to the Fourth Amendment's exclusion remedy.

In *United States v. Leon*, 468 U.S. 897, 900, 922 (1984), the Supreme Court ruled that where law enforcement officers act in "objectively reasonable reliance" on a search warrant issued by a "detached and neutral magistrate" ultimately found to be lacking in probable cause, the evidence seized remains admissible.  The Supreme Court stated:

> It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment.  In the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination or his judgment that the form of the warrant is technically sufficient.  'Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.'

*Id.* at 921 (quoting *Stone v. Powell*, 428 U.S. 465, 498 (1976)).

"In the absence of any allegation that the magistrate judge was misled by information that the affiant provided that was false or that he would have known to be false but for his reckless

disregard for truth, that the magistrate judge abandoned his detached and neutral role in issuance, that the affidavit was so lacking in indicia of probable cause that reliance upon it was unreasonable or that the warrant was so facially deficient that the agents could not have reasonably concluded that it was valid, the [good faith] exception applies." *Galloway*, 2020 WL 4369648, at *4.  Such evidence should only be excluded where it is appropriate to deter police misconduct; otherwise, "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion."  *Leon*, 468 U.S. at 922.

Here, there is no claim that the magistrate abandoned his detached and neutral role or that the warrant was facially deficient.  Nor does Defendant allege that Detective Dunham was dishonest or reckless in preparing his affidavit.  Defendant claims only that the evidence must be suppressed because "no reasonable officer could believe that the warrant demonstrated the required probable cause."  Motion at 17.  Under clear Supreme Court precedent, this argument fails.

Even if somehow reasonable minds could differ about whether the Dunham Affidavit established probable cause to believe evidence of a crime would be found in Defendant's Apartment, it cannot be said that the Dunham Affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Leon*, 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610–611 (1975) (Powell J., concurring in part)).

As detailed above, detectives arrived at Defendant's Apartment to arrest Defendant on a warrant in connection with firearms charges.  Upon knocking and announcing their presence, detectives heard people inside Defendant's Apartment engaging in suspicious evasive behavior.  Then, upon entry, they immediately saw Fullard conduct further evasive behavior.  Detectives

found only Defendant and Fullard in Defendant's Apartment, supporting the logical inference that Defendant and Fullard were the people they heard engaging in deliberately furtive actions.  A loaded firearm was then found in Defendant's Apartment, over which Defendant had control and to which he had right of access, while he was present therein.  These facts provided in the Dunham Affidavit would provide any reasonable officer with an objective belief that the warrant to search for Defendant's Apartment for firearms and related accessories was valid.  This is a far cry from the rare case where an affidavit is so clearly insufficient as to warrant the "extreme sanction of exclusion." *Leon*, 468 U.S. at 926.

Moreover, upon finding the first loaded gun in Defendant's Apartment, detectives froze the scene and sought a warrant from a neutral, detached magistrate to search Defendant's Apartment.  Detectives found the second loaded gun in Defendant's Apartment only after obtaining and executing the search warrant.  Suppression, the remedy of "last resort," is not appropriate here, as there was no police misconduct to be deterred.  *Utah*, 136 S. Ct. at 2061; *see Leon*, 468 U.S. at 922.

Thus, even if the Court concludes that the magistrate erred by issuing the search warrant, the Court should apply the good faith exception and deny the Motion; suppression is not warranted.

## **CONCLUSION**

For the foregoing reasons, including that there was sufficient evidence supporting the Taunton District Court magistrate's finding of probable cause to issue the search warrant, which is owed great deference, and because detectives seized evidence from Defendant's Apartment in good faith reliance on a warrant issued by a neutral magistrate, Defendant's Motion should be denied and the Fourth Amendment does not require the exclusionary remedy sought by Defendant.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By:     */s/ Sarah B. Hoefle*
Sarah B. Hoefle
Assistant United States Attorney

Dated:  September 8, 2021

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


<u>/s/ Sarah B. Hoefle</u>
Sarah B. Hoefle
Assistant United States Attorney

Date:  September 8, 2021