UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | * |
| | *   Criminal No. 1:20-cr-10231-IT |
| JERROD LEE, | * |
| | * |
| Defendant. | * |

MEMORANDUM AND ORDER
October 5, 2021

TALWANI, D.J.

Defendant Jerrod Lee is charged with being a felon in possession of firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) and faces firearm forfeiture under 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c). Indictment [#1]. Presently before the court is Defendant's Motion to Suppress Evidence Derived from the Execution of a Search Warrant [#64]. For the reasons that follow, the Motion [#64] is DENIED.

I. Background

On August 6, 2020, Boston Police Detective Sergeant Romero contacted Taunton Police Detective Larkin and informed him that Jerrod Lee had an active arrest warrant from Middlesex Superior Court for a firearms charge. Affidavit in Support of Application for Search Warrant ("Dunham Affidavit) [#64-2] at ¶ 2.[1] Detective Sergeant Romano asked for assistance from the Taunton Police Street Crimes Unit to locate and apprehend Lee the morning of August 7, 2020. Id.

---

[1] The Dunham Affidavit [#64-2] states that the Middlesex arrest warrant was for a probation violation, id., but both Parties clarify the arrest warrant was related to a violation of Lee's pre-trial release for an open firearm case, not to a probation violation. See Mot. 2 n.1 [#64]; Opp'n 3 n.3 [#70].

On August 7, 2020, detectives from the Boston and Taunton police departments met prior to executing the arrest warrant for Lee. Id. at ¶ 3. Detective Sergeant Romano stated that Lee's location was being monitored via a GPS ankle bracelet and that his location had registered twice that morning in Apartment A-13 at 819 County Street in Taunton. Id.[2]

The facilities manager for the apartment complex at 819 County Road provided Taunton Police Department Detective Brian Dunham a master key to allow the detectives to unlock the entry door to the complex and the door to Apartment A-13, Lee's apartment. Id. at ¶ 4.

Around 10:30 a.m. on August 7, 2020, detectives entered the apartment building and knocked and announced their presence at the door of Apartment A-13. Id. at ¶ 5. After knocking, detectives "immediately heard what appeared to be people inside the apartment hurriedly scurrying about." Id. Detectives then used the master key to unlock Apartment A-13's door and entered the apartment. Id. Inside, detectives saw a man[3] standing next to a couch; detectives could not see the man's hands, but heard a "metallic clicking noise as though he had dropped something metal on the floor." Id. at ¶ 6. The man then raised both of his empty hands over his head as instructed by the detectives and while his hands were raised, he "appeared to be attempting to kick something under the couch with his foot." Id. Seconds later, Lee appeared from a hallway with his empty hands above his head, as ordered by detectives. Id. at ¶ 7.

Detectives conducted a "protective sweep of the apartment" and found no one else. Id. at ¶ 8. As detectives handcuffed Lee and the other man, detectives saw a black, semi-automatic

---

[2] The Taunton Police Street Crimes detectives executed a different arrest warrant for Lee at this same address in April 2020. Dunham Aff. ¶ 1 [#64-2]. When the April arrest warrant was executed, Lee was inside Apartment A-13. Id.

[3] This man was not identified in the Dunham Affidavit [#64-2].

handgun on the floor next to the couch where the first man had been observed trying to kick something with his foot. Id.

Detectives then secured and froze the apartment. Id. at ¶ 9.

Detective Dunham presented the Dunham Affidavit [#64-2] to the Taunton District Court and requested a search warrant for Lee's apartment, Apartment A-13 at 819 County Road; an order of seizure for any firearms, feeding devices, accessories for firearms, and ammunition found in the apartment; and requested the search warrant extend to any persons present in the apartment when the warrant was executed. Id. at 6; see also Application for Search Warrant [#64-1].[4]

The same day, the Taunton District Court issued the search warrant authorizing police to search 819 County Street, Apartment A-13, in Taunton, Massachusetts, the person of Jerrod Lee, and any person present at the apartment. Search Warrant [#64-3].

The pending Motion [#64] seeks to suppress the evidence obtained from the execution of this search warrant.

II.  Legal Standard

"'A warrant application must demonstrate probable cause to believe that (1) a crime has been committed—the 'commission' element, and (2) enumerated evidence of the offense will be found at the place searched—the so-called 'nexus' element.'" United States v. Dixon, 787 F.3d 55, 59 (1st Cir. 2015) (quoting United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999)). The probable cause inquiry is a "'practical, common-sense' one that takes into account the 'totality of the circumstances.'" Id. (quoting Feliz, 182 F.3d at 86 and United States v. Khounsavanh, 113

---

[4] An addendum to the Affidavit [#64-2] provided the definitions of firearm and ammunition pursuant to Mass. Gen. Laws ch. 140 § 121. Id. at 9.

F.3d 279, 283 (1st Cir. 1997)). In making the probable cause determination, the "issuing magistrate ordinarily considers only the facts set forth in supporting affidavits accompanying the warrant application." United States v. Zayas-Diaz, 95 F.3d 105, 111 (1st Cir. 1996). However, the probable cause showing "leaves ample room for reasonable inferences based on common experience: an affidavit submitted to show probable cause need not point to some straight-line connection but, rather, may rely on the affiant's connecting of a series of dots in a commonsense way." United States v. Adams, 971 F.3d 22, 32 (1st Cir. 2020) (citing Florida v. Harris, 568 U.S. 237, 244 (2013)); see also id. ("A showing of probable cause may be premised on either direct or circumstantial evidence or some combination of the two.") (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)).

A reviewing court must examine the affidavit in support of the warrant in a "practical, commonsense fashion" and give "considerable deference" to the magistrate's finding that the information contained therein satisfied the probable cause showing. Feliz, 182 F.3d at 86 (noting the focus is on "whether the magistrate had a substantial basis for concluding probable cause existed"). Reversal is only appropriate where a reviewing court sees "no substantial basis for concluding that probable cause existed." Dixon, 787 F.3d at 58-59.

III.   Discussion

Defendant argues the Dunham Affidavit [#64-2] was insufficient because it failed to demonstrate probable cause that a crime had been committed, the "commission" element, and probable cause that particularized evidence, firearms and ammunition, would be in Lee's apartment, the "nexus" element. The government argues both elements were satisfied.

A. Whether the Commission Element Was Satisfied

Defendant first argues the warrant application failed to establish probable cause that a crime had been committed because the Dunham Affidavit [#64-2] was silent as to whether the individual who was observed kicking the gun under the couch was prohibited from possessing the gun, and no evidence was offered that the gun was illegally owned or obtained. Mot. 6 [#64]. Next Defendant argues that even if the gun provided probable cause to believe the unidentified man committed a crime by possessing the gun, that probable cause would not transfer to Lee where the Dunham Affidavit [#62-2] presents no evidence Lee possessed or was even aware of the gun. Id. at 7.

A warrant application establishes probable cause for the commission element when the facts presented to the magistrate "warrant a man of reasonable caution" to believe a crime has been committed. Feliz, 182 F.3d at 86. This finding can be satisfied with either direct or circumstantial evidence. Adams, 971 F.3d at 32; see also Feliz, 182 F.3d at 87.

The Dunham Affidavit [#64-2] states that after detectives knocked and announced their presence at Lee's apartment, detectives heard "people inside the apartment hurriedly scurrying about." Dunham Aff. at ¶ 5 [#64-2]. The Dunham Affidavit [#64-2] also establishes that, upon entry, detectives observed a man "bent over next to the couch with his hands concealed by the couch, and from that area came a metallic clicking noise, as though he had dropped something metal on the floor"; when that same man stood with his empty hands raised, detectives noticed he "appeared to be attempting to kick something under the couch with his foot"; and detectives later saw a black handgun in that "exact area." Id. at ¶¶ 6, 8. The Dunham Affidavit [#64-2] also states that "seconds" after the unidentified man was observed kicking something under the couch, Lee emerged from a hallway with his empty hands raised. Id. at ¶ 7. Finally, after Lee and

5

the other man were handcuffed, detectives performed a protective sweep of the apartment and confirmed no one except Lee and the unidentified man were present. Id. at ¶ 8.

Constructive possession of a firearm is established "when a person 'knowingly has the power and intention at a given time of exercising dominion and control over [the firearm] either directly or through others.'" United States v. Ridolfi, 768 F.3d 57, 61-62 (1st Cir. 2014) (quoting United States v. McLean, 409 F.3d 492. 501 (1st Cir. 2005)). "Constructive possession may be sole or joint and does not require actual ownership of the firearm. However, a person must have actual knowledge of the weapon in order to have constructive possession of it." Id. Knowledge can be proven by circumstantial evidence, such as "a defendant's control over the area where the contraband is found (e.g., defendant's home or automobile)." Id. (quoting McLean, 409 F.3d at 501). Barring any countervailing considerations, a defendant who exercises "dominion and control over his own abode is deemed to possess the objects found therein." United States v. Nuñez, 852 F.3d 141, 145 (1st Cir. 2017). "[F]or example, '[t]he location of . . . firearms in a defendant's home . . . is a common basis for attributing possession to the defendant." Id. (quoting United States v. Zavala Maldonado, 23 F.3d 4, 7 (1st Cir. 1994)).

The arrest warrant and subsequent search warrant were executed at Lee's residence where only Lee and the unidentified man were present. Lee's exertion of control over his home, where a gun was found, in conjunction with other circumstantial evidence, *i.e.*, detectives hearing people hurriedly scurrying in the apartment prior their entry and seeing the unidentified man drop something that sounded metallic and then kick at something under the couch immediately after their entry, is sufficient to establish a fair probability Defendant had constructive possession over the firearm.

While the Dunham Affidavit [#64-2] does not establish detectives knew Defendant was a convicted felon and was, therefore, statutorily barred from possessing a firearm, it does establish detectives knew Lee had an active arrest warrant relating to a firearm charge. The statements regarding Lee's pending arrest warrant relating to a firearm charge were sufficient to establish the fair probability that, given those pending charges, Defendant's possession of a firearm would violate a law, including by violating a pretrial condition prohibiting the possession of firearms and ammunition. Accordingly, because there was probable cause to believe a crime had been committed, the commission element was satisfied.[5]

B. Whether the Nexus Element Was Satisfied

Defendant also contends that because the Dunham Affidavit [#64-2] did not provide sufficient information to identify the man in Lee's living room and did not explain why that man's possession of a gun made it probable there would be other firearms and ammunition in Lee's apartment, the Affidavit [#64-2] failed to satisfy the nexus element. Mot. 10-12 [#64]; see also id. at 14-17 (explaining the Dunham Affidavit [#64-2] did not provide evidence Lee sold firearms from his apartment or kept them in his apartment and, other than the gun found near the couch, there was no evidence tying Lee's apartment to guns or ammunition).[6]

---

[5] Defendant argues the facts here are similar to those in United States v. Lester, 184 F. App'x 486 (6th Cir. 2006), where the Sixth Circuit found there was insufficient evidence to support a probable cause finding that the defendant, as opposed to someone else, committed a crime. In Lester, the affidavit relied on the defendant's ten-year-old drug-related arrest and recent allegations of the defendant's *brother's* criminal activity and offered no evidence linking the defendant with his brother's criminal activity beyond the fact the two may have been in contact. The facts here are distinguishable: Lee was arrested on a pending arrest warrant relating to firearm charges and, upon execution of that warrant, a gun was found in his house.

[6] Defendant also argues there are parallels between the facts here and those in United States v. McPhearson, 469 F.3d 518 (6th Cir. 2006), where the nexus between the evidence and enumerated offenses and the place to be searched was found lacking. McPhearson is also

7

To satisfy the nexus element a court only needs to find "fair probability – not certainty – that evidence of a crime will be found in a particular location based on the totality of circumstances." United States v. Lindsey, 3 F.4th 32, 39 (1st Cir. 2021). "The nexus between an alleged crime and the place searched may be 'inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where criminals would hide [evidence of a crime].'" Id. (quoting United States v. Rodrigue, 560 F.3d 29, 33 (1st Cir. 2009) (alteration in Rodrigue) (quoting United States v. Ribeiro, 397 F.3d 43, 49 (1st Cir. 2005))). The nexus element may be satisfied even without direct evidence. United States v. Gonzales-Arias, 946 F.3d 17, 24 (1st Cir. 2019), cert. denied, 140 S. Ct. 2729 (2020) (concluding that probable cause may be found even if officers never spotted illicit objects at the scene).

While the Dunham Affidavit [#64-2] did nor recite any "direct evidence" suggesting the presence of additional firearms or ammunition in the apartment, direct evidence is not required; instead, the nexus element requires "'a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Ingram, No. CR.A. 02-10360-RWZ, 2003 WL 21058181, at *2 (D. Mass. May 9, 2003) (quoting Feliz, 182 F.3d at 86). Here, evidence of suspicious sounds described as "hurriedly scurrying"; the unidentified man dropping and kicking something under a couch where a gun was later found; and the fair probability Lee

---

distinguishable: there the defendant was arrested for assault and battery and when searched incident to arrest, police officers found a small quantity of crack cocaine in his pockets; the Sixth Circuit found the drugs in the defendant's pocket did not establish a fair probability that evidence of a drug crime would be found in the defendant's home. Here, officers knew Lee had a pending arrest warrant related to a firearm charge and when they executed that warrant, at Lee's apartment, they found a gun in plain sight.

constructively possessed that gun support the finding of a sufficient nexus between firearms and ammunition and Lee's apartment.[7]

V.      Conclusion

Accordingly, for the aforementioned reasons, Defendant Lee's Motion to Suppress [#64] is DENIED.

IT IS SO ORDERED.

Date: October 5, 2021                                   /s/ Indira Talwani
                                                        United States District Judge

---

[7] The Parties dispute whether the good-faith exception should apply if the court found the warrant was not supported by probable cause. Mot. 17-18 [#64]; Opp'n 17-19 [#70]. Under the good faith exception, suppression is appropriate only where officers' good-faith reliance on the search warrant is unreasonable because the search warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." United States v. Leon, 468 U.S. 897, 922 (1984). Because the court has found the warrant was supported by probable cause, it need not address the applicability of the good faith exception.